OPINION OF THE COURT
Arlene D. Goldberg, J.
The People have moved this court for an order removing *801 counsel (counsel) for a witness before the grand jury (witness) who has agreed to waive immunity and testify in his own behalf about his involvement in a matter currently under investigation by the grand jury. The witness is opposing this application.
Factual Background
A search warrant (warrant) was executed on March 26, 2002 at the company allegedly controlled in part by the witness (company). The company is located in Westchester County. Present at the time the warrant was executed were the witness, counsel and the son of the witness (son). Subsequent to the execution of the warrant, the son was arrested and charged in New York County with crimes relating to his involvement in business related activities of the company.[1] The witness was not arrested.
During the execution of the warrant, the police searched various rooms within the company’s offices, including desks located within those rooms. Inside one of the desks that was searched (desk), the officers allegedly located a loaded handgun.[2] The People contend that counsel, prior to the recovery of the handgun, admitted having dominion and control over the desk. Counsel denies making such assertions; however, counsel does not dispute that her office is located within the area searched by the police officers pursuant to the warrant. The People have asserted that, in addition to counsel, both the witness and the son had access to the desk. To date, no one has been charged with possession of the handgun.
On May 21, 2002, the People received written notice of the witness’ intent to testify before the grand jury in the event charges against him were being submitted.[3] Subsequent to the receipt of this notice the People were informed that counsel *802 had been retained as the attorney for the witness and that all communications regarding the grand jury matter should be conducted through counsel.
The primary focus of the grand jury investigation with re - spect to potential charges against the witness is the role the witness played in filing an allegedly false document with the New York City Department of Design and Construction on behalf of the company. Because the document contained information relating to the company which could have been derived from other documents or records maintained in the company’s offices, one issue the People intend to explore with the witness before the grand jury is the relationship of the witness to the company and the areas, rooms, offices, cabinets or desk space to which the witness has access within the company. The desk is one of the locations about which the witness will be questioned, although the People do not intend to ask the witness about his connection to the handgun at this time.
Because the desk will be a subject of inquiry by the grand jury and because counsel has the same potential for criminal liability for possession of the handgun as the witness (see Penal Law § 10.00 [8]; § 265.01 [1]), the People believe there is an inherent, unwaivable conflict of interest and that counsel must be removed from representing the witness. Both counsel and the witness oppose the removal of counsel. After receiving writ - ten submissions by the People and counsel, an oral argument was held on May 31, 2002 before this court. Counsel, the People, the witness and the son’s attorney were all provided an opportunity to state their respective positions. Most notably, the witness unequivocally stated that despite the fact that a potential conflict exists, the witness was steadfastly in favor of continuing to be represented by counsel.
Legal Analysis
The Sixth Amendment to the United States Constitution provides that anyone accused of a crime shall enjoy the right “to have the Assistance of counsel for his defense.” (US Const Amend VI.) While the right to counsel is absolute, the right to representation by the attorney of his choice is not. (See Matter of Abrams, 62 NY2d 183, 196 [1984].) There is, however, a presumption in favor of allowing a defendant to be represented by the counsel of his choosing. (See United States v Orgad, 132 F Supp 2d 107, 120 [ED NY 2001].) This presumption will not yield unless and until a competing public interest warranting the recusal of counsel can be demonstrated. (See Matter of Abrams, supra, 62 NY2d at 196.)
*803 While there is no hard and fast rule as to what constitutes a competing public interest mandating the removal of counsel, a court’s duty to protect the integrity of the legal system and the ethical standards of the legal profession have been recognized by both the state and federal courts as being of tantamount importance. (See id. at 197; see also Wheat v United States, 486 US 153, 160 [1988]; United States v Locascio, 6 F3d 924, 931 [2d Cir 1993], cert denied 511 US 1070 [1994]; Orgad, supra, 132 F Supp 2d at 120.) One situation where the integrity of the legal system and the ethical standards of the legal profession are perceived as being in jeopardy is when an attorney continues to represent a client even though he possesses firsthand knowledge of events at issue and such knowledge potentially makes him a witness for either his client or the opposing party. (See Locascio, supra, 6 F3d at 933.) This situation is so fraught with possible issues that in 1973 the drafters of the Model Code of Professional Responsibility codified a rule, commonly referred to as the “advocate-witness rule,”[4] to instruct lawyers, faced with this situation, when withdrawal from representation is appropriate. (See Judith A. McMorrow, The Advocate as Witness: Understanding Context, Culture and Client, 70 Fordham L Rev 945, 954-956 [2001].)
In the instant matter, counsel is clearly in the position conceived of by the drafters of the Model Code. The People have indicated that they do not presently anticipate that the possession of the handgun will be a subject of the current grand jury proceeding. (See minutes, at 24.) Answers to questions regarding access to and control of various places within the company’s offices, however, bear directly on who a grand jury could ultimately find accountable for possession of the handgun. Because a person can be held responsible for possessing a handgun if they have dominion and control over a location where a handgun is recovered, if counsel denies knowledge of the presence of the handgun or denies having access to the desk, her very denial implicates the witness. Conversely, if the witness denies knowledge of the presence of the handgun or denies having access to the desk, his denial implicates counsel. If both deny having such knowledge or access, the People may *804 seek charges against both counsel and the witness and then attempt to seek one to testify against the other. In sum, because counsel admits having office space within the company (see counsel’s letter to the court, May 30, 2002, at 2 n 1), she possesses pertinent factual information which makes her a likely witness on a significant issue involving her client.
Counsel does not deny that if the witness were actually charged with crimes relating to possession of the handgun she would have to remove herself as his lawyer. (See minutes, at 19, 29.) Counsel’s present objection is that she should not be removed at this juncture when there are no pending charges regarding possession of the handgun and the witness has unequivocally waived the potential conflict. (See minutes, at 29-30.) In the alternative, counsel argues she should not be removed because she is not a necessary witness for a case involving the handgun as other witnesses are available to testify who could provide the same information she could about access and control of the area where the handgun was allegedly recovered. (See May 30, 2002 letter, at 5-6.)
Considering, first, counsel’s argument that the existence of other witnesses negates any potential conflict of interest between her and the witness, the court finds that this argument is without merit. In support of her position, counsel cites Broadwhite Assoc. v Truong (237 AD2d 162 [1st Dept 1997]). In Broadwhite, the Court held that where an attorney is not a “necessary” witness because the information the attorney possesses is redundant to other available testimony, a court should not resort to the drastic remedy of disqualifying counsel pursuant to the advocate-witness rule. (Id. at 163.) However, the Broadwhite Court also said that if the party moving for disqualification were able to demonstrate that the attorney’s expected testimony is particularly adverse to the factual assertions of his client (something the moving parties in Broadwhite could not do), then disqualification would be warranted. (Id.) Based upon counsel’s representations during the proceedings in the instant matter, it is clear that were she to testify, she would acknowledge having office space within the company and access to other areas within the company, but would deny knowing the handgun was present. Counsel could also testify that the witness had access to many, if not all, of the same areas to which counsel had access. By denying knowledge of the handgun but conceding that she has shared access with the witness to locations within the company’s premises, whether or not it was her intention to do so, counsel would implicate the *805 witness as the person responsible for the presence of the handgun in the offices of the company. These potential factual assertions are so adverse to the interests of the witness as to warrant disqualification.
Of course, at this juncture, neither the witness nor counsel has been called upon to testify regarding the handgun and counsel has raised a legitimate concern that a decision for disqualification is premature at this point. However, because possession of the handgun is entwined with the People’s proposed line of questions for the witness before the grand jury (see minutes, at 12), counsel’s disqualification prior to the witness’ appearance before the grand jury is expedient.[5]
A court overseeing pretrial conflict of interest issues is often in the unfortunate position of having to decide whether to allow a client to waive the potential conflict without “the wisdom of hindsight * * * , but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly.” (Wheat, supra, 486 US at 162.) Consequently, the court before whom the issue is raised is entitled to substantial latitude in deciding to disallow a waiver when the potential conflict could evolve into an actual conflict as proceedings progress. (See id.) Here, even if counsel was never going to appear as a witness against her client, because of her potential criminal liability for possession of the handgun, her interests are clearly divergent to his with respect to the issues of who had access, dominion and control over the desk. It is in counsel’s interest to have the witness admit to having dominion and control over the desk because these answers limit or even absolve her from potential criminal liability. It would, however, presumably be in the best interest of the witness to either deny having access to the desk or to invoke his Fifth Amendment rights in lieu of answering any questions about the desk. Counsel may, therefore, be tempted to advise the witness to answer ques *806 tions before the grand jury in such a way so as to minimize her own exposure which, in turn, would maximize the witness’ exposure.
“An actual or potential conflict cannot be waived if, in the circumstances of the case, the conflict is of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney’s representation.” (United States v Schwarz, 283 F3d 76, 96 [2d Cir 2002].) While the witness has expressed extraordinary confidence in counsel’s abilities and has stated unequivocally that the potential conflict will not affect her ability to provide effective representation (see minutes, at 28-29), his judgment is surely clouded by his expressed distrust of attorneys in general (see id.), and by the comfortable relationship he and counsel have previously enjoyed. (See id.) Counsel has concomitantly assured the court that because she believes the People’s stated intent to refer the matter to the Westchester County District Attorney’s Office is “spurious,” she does not fear any criminal repercussions for possession of the handgun. (See May 30, 2002 letter, at 2, 8.) Although her beliefs may be heartfelt, the reality of the situation is that her ability to effectively represent her client is impaired.[6] No “rational defendant” would seek advice from an attorney whose self-interest and desire for self-preservation threatens to permeate the advice the defendant is seeking. (See Schwarz, supra, 283 F3d at 96.) The interests of counsel and the witness are completely at odds in this case. Their relationship with respect to the pending grand jury investigation must be terminated.
Accordingly, counsel is hereby disqualified from representing the witness in any proceedings relating to this grand jury investigation.

. The investigation before the grand jury involves, among other things, an inquiry into whether the son committed perjury during two depositions. At the time of the depositions, counsel represented the son. Once the son was charged with perjury for testimony given while represented by counsel, the son retained a different attorney to represent him in the criminal prosecution.

. Counsel questions whether the police officers conducting the search ever recovered a handgun as the People now claim. (See minutes of May 31, 2002, at 8.)

. This written notice was submitted by the son’s attorney, not by counsel. However, due to the potential of a conflict of interest if the witness and the son were represented by the same attorney, the witness chose to hire a different attorney than the son and subsequently retained counsel for the instant matter.

. The rule is codified in the New York State Code of Professional Responsibility as DR 5-102 (22 NYCRR 1200.21). The rule states, in relevant part: “A lawyer shall not act, or accept employment that contemplates the lawyer’s acting, as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client * * * .” (22 NYCRR 1200.21 [a].)

. In Abrams (supra), the Court of Appeals held that removal of counsel was inappropriate at the grand jury stage. (62 NY2d 183.) The conflict of interest raised by the Attorney General in Abrams, however, involved the representation of multiple witnesses called to appear before the grand jury by one attorney. In holding that removal at the grand jury stage was premature, the Court found that unless and until two or more of the witnesses were formally charged, the integrity of the judicial system was not challenged. (Id. at 199-200.) The situation in the instant matter is distinguishable, despite the fact that the witness has not yet been charged with a crime, because the conflicting interests of counsel and the witness are implicated by the very questions the People intend to ask the witness before the grand jury.

. Counsel argues that because it has been several months since the search occurred and the possession charges are relatively simple to present, the resulting delay is a strong indicator that charges concerning the handgun will never be presented to a grand jury. (See minutes, at 8.) Whether counsel and the witness face misdemeanor or felony level charges for possession of the handgun has not been disclosed. As of the date of this decision, however, the statute of limitations has not expired for either misdemeanor or felony level offenses. (See CPL 30.10 [b], [c].) Consequently, the People are not yet procedurally barred from presenting these charges and the potential conflict still looms.